Lawrence Brewster
Regional Solicitor
Daniel J. Chasek
Associate Regional Solicitor
Susan Seletsky, Attorney
**Boris Orlov**, Attorney (CSBN 223532)
Office of the Solicitor (Sol# 0818279)
United States Department of Labor
350 S. Figueroa St., Suite 370
Los Angeles, California 90071-1202
     Telephone: (213) 894-5410
     Facsimile:  (213) 894-2064
orlov.boris@dol.gov

Attorneys for the Plaintiff

UNITED STATES DISTRICT COURT

FOR THE

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HILDA L. SOLIS**,*<br>   Secretary of Labor,<br>   United States Department of Labor,<br><br>         Plaintiff,<br><br>         v.<br><br>**BEST MIRACLE CORPORATION,**<br>   A California corporation et al.,<br><br>         Defendants. | ) Case No. SACV08-00998 CJC (MLGx)<br>)<br>) **PLAINTIFF'S TRIAL BRIEF**<br>)<br>)<br>)<br>)<br>) **The Honorable Cormac J. Carney**<br>)<br>)<br>) Final Pretrial Conference:<br>) February 8, 2010<br>)<br>) Trial Date:  February 16, 2010<br>)<br>)<br>) |

\* Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, the caption of this action has been amended to reflect the appointment of Secretary Solis.

1

2                                 TABLE OF CONTENTS

3    A.  Summary of Plaintiff's Claims …………………………………….      3

4    B.  Plaintiff's Contentions

5            I.      Employees of Best Miracle are covered by the

6                    Fair Labor Standards Act ………………………………      3

7            II.     Defendants Violated the FLSA's Recordkeeping

8                    Requirements ..………………………………………      4

9            III.    Defendants Failed to Pay the Minimum Wage

10                   Required by the FLSA …………………………………      5

11           IV.     Defendants Failed to Pay Employees an Overtime Rate for

12                   All Hours Worked over 40 Hours in a Workweek………7

13           V.      Necessary Proof of Backwages Due …………………… 9

14           VI.     Backwage Computations…..……………………………...11

15           VII.    Defendants violated the "hot goods" provision

16                   of the FLSA ………………………..……………………12

17           VIII.   Defendants Thuy Thi Le and Toan Van Nguyen

18                   are employers…………………………………….……14

19           IX.     Prospective Injunction …………………………………  15

20           X.      Prejudgment Interest ………………………………… 16

21           XI.     Statute of Limitations ………………………… 16

22   C.  Defendants' Affirmative Defenses………………………………  18

23   D.  Anticipated Evidentiary Issues………………………………… 22

24   E.  Anticipated Issues of Law…………………………………………23

25   F.  Bifurcation………………………………………………………23

26   G.  Jury Trial………………………………………………….. 23

27   H.  Attorney Fees………………………………………………23

28

**Trial Brief**                                                       **Page 2 of 23**

**A. Summary of Plaintiff's Claims**

Plaintiff Hilda L. Solis, the Secretary of Labor, U.S. Department of Labor ("Secretary"), brings this action to enjoin the Defendants, Best Miracle Corporation, a California corporation ("Best Miracle"), Thuy Thi Le individually and as managing agent of the corporate Defendant and Toan Van Nguyen, individually and as managing agent of the corporate Defendant (collectively, "Defendants"), from violating the provisions of Sections 15(a)(2) and 15(a)(5) of the Fair Labor Standards Act of 1938 ("FLSA" or "Act"), 29 U.S.C. § 215(a)(2) and § 215(a)(5) and continuing to withhold payment of unpaid minimum wages and overtime due the Defendants' employees under the FLSA plus pre-judgment interest.

The Secretary shall establish that during the period of July 30, 2005 through August 12, 2007 ("subject period"), Defendants violated the FLSA's minimum wage (29 U.S.C. § 206), overtime (29 U.S.C. § 207) and recordkeeping provisions (29 U.S.C. § 211). Because the Defendants shipped goods made by employees who were not paid the wages required by the Act, they violated the FLSA's prohibition on shipment of "hot goods," 29 U.S.C. § 215. This action is brought under FLSA Section 17, 29 U.S.C. § 217, which provides for injunctive relief in actions brought by the Secretary.

**B. Plaintiff's Contentions**

### I. Employees of Best Miracle are covered by the Fair Labor Standards Act

To establish that the Defendants are subject to the requirements of the FLSA, Plaintiff will show that the Defendants employed employees in an enterprise engaged in commerce or in the production of goods for commerce as defined in 29 U.S.C. § 203(s)(1). An enterprise engaged in commerce or in the production of goods for commerce means an enterprise that (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000. FLSA Section 3(s)(1)(A), 29 U.S.C. § 203(s)(1)(A).

1  Once enterprise coverage is established, all employees of the enterprise are covered by
2  the FLSA's protections.  <u>Maryland v. Wirtz</u>, 392 U.S. 183, 188, 88 S. Ct. 2017 (1968).

3       <u>Evidence</u>:  Defendants have indicated that they shall stipulate to enterprise cover-
4  age.

5  **II.  Defendants Violated the FLSA's Recordkeeping Requirements**

6       The Plaintiff contends that during the subject period the Defendants violated Sec-
7  tions 11(c) and 15(a)(5) of FLSA, 29 U.S.C. § 211(c) and § 215(a)(5), because they
8  failed to maintain accurate records of employee data, earnings, and hours worked.  Sec-
9  tion 11(c) of the FLSA, 29 U.S.C. § 211(c), mandates the making, keeping and preserv-
10 ing of information relating to employees' wages and hours and other conditions of em-
11 ployment, and authorizes the Secretary of Labor to issue regulations specifying the re-
12 cords to be kept.  The regulations are contained in 29 C.F.R. § 516.

13      <u>Evidence</u>:  Plaintiff will establish the recordkeeping violations by (i) the testimony
14 of the Defendants' employees as to their hours worked and the failure of the time cards
15 to accurately reflect all hours worked; (ii) the testimony of John Leung, the investigator
16 for the Wage and Hour Division, Employment Standards Administration, U.S. Depart-
17 ment of Labor ("Wage and Hour Investigator," or "WHI"), that Defendants failed to pro-
18 duce the time records for all the hours worked by employees; (iii) testimony and docu-
19 mentary evidence regarding surveillance of the Best Miracle shop conducted by WHI
20 Leung. Mr. Leung observed at least 30 instances where cars registered to employees
21 were parked at the shop on days where the time cards did not show the employee as hav-
22 ing worked there, or long before or after the employee was shown as having punched in
23 or out for the day; (iv) testimony and documentary evidence that Defendants' payroll re-
24 cords falsely show that employees as working between 30-40 hours per week when, in
25 fact, they worked approximately 60 hours a week; (v) testimony and documentary evi-
26 dence from Wage Hour investigators regarding a July 30, 2007 visit to the shop, when
27 the WH investigators observed 31 employees at their work stations, 6 in the lunch room
28 and 10 outside the shop, while Defendants' timecards were punched in to show only 15

**Trial Brief**                                                                 **Page 4 of 23**

as working on that day; (vi) discrepancies between Defendants' payroll records and time cards including instances where employees' time cards showed they had worked but they do not appear on the payroll; (vii) employee testimony regarding instances where they were paid in cash; (viii) testimony and documentary evidence that the cash payments were not reflected on the payroll records; and, (ix) the admission by Defendants that the Best Miracle shop was open from 6:00 a.m. to 6:00 p.m. Monday through Friday and from 6:00 a.m. to 12:00 p.m. or later, up through 5:00 p.m., on Saturdays.

Applicable Law:   An employer fails to keep the required records at his peril. Where the employer fails to keep accurate and complete payroll and hours records, the Plaintiff may invoke the criteria set forth in Mt. Clemens Pottery Co., 328 U.S. 680, 66 S. Ct. 1187 (1946), requiring the employer to produce evidence of the precise amount of work performed or evidence to rebut the reasonableness of the inferred extent of violations.  Id. at 687-688.   This rule has been applied in many circuit courts in actions brought by the Secretary of Labor.  See, e.g., Brock v. Seto, 790 F.2d 1446, 1448-49 (9th Cir. 1986); Mumbower v. Callicott, 526 F.2d 1183, 1186 (8th Cir. 1975); Brennan v. General Motors Acceptance Corp., 482 F.2d 825, 829 (5th Cir. 1973); Hodgson v. Humphries, 454 F.2d 1279, 1283 (10th Cir. 1972).

The testimony of the employees as to their hours worked, discrepancies in time records, manner of payment and observations of Wage Hour investigators will establish that Defendants' time and payroll records are not accurate or complete in that they consistently reflect fewer hours than employees actually worked.

### III.  Defendants Failed to Pay the Minimum Wage Required by the FLSA

The Plaintiff contends that the Defendants violated the provisions of Sections 6 and 15(a)(2) of the FLSA, 29 U.S.C. § 206 and §215(a)(2), by paying their employees wages at rates less than the appropriate minimum wage during the subject period. Section 6(a) of FLSA, 29 U.S.C. § 206(a), provides:

Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce or is em-

**Trial Brief**                                                                                          **Page 5 of 23**

ployed in an enterprise engaged in commerce or in the production of goods for commerce, wages…[of] $5.15 [$5.85] per hour….[1]

Evidence:  The Plaintiff will establish that employees were not paid the minimum wage required by the FLSA by the evidence adduced in support of the recordkeeping violation as set forth above, and, in addition, (i) the claim/admission by Defendants that they did not make any cash payments to employees; (ii) the testimony of the Wage Hour Investigator as to the absence of any cash pay records produced by Defendants, (iii) the testimony of employees that they worked approximately 60 hours per week and observed that other employees worked similar hours; and, (iv) testimony and documentary evidence regarding Wage Hour's calculations of the unpaid minimum wage due.

Applicable Law:   To prove Defendants violated this provision of the FLSA, the Plaintiff must show that the Defendants employed persons and compensated them at rates less than those required by the FLSA for each hour worked.  Mt. Clemens Pottery Co., 328 U.S. at 687; Brock v. Seto, 790 F.2d at 1448-49.  However, in view of the remedial purpose of the FLSA and the employer's statutory obligation to keep accurate and complete payroll and hours records, the employee's burden is not to be an impossible hurdle.  Id.  As the Supreme Court held in Mt. Clemens Pottery Co., 328 U.S. at 687:

> Where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes ... the solution ... is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work.  Such a result would place a premium on an employer's failure to keep proper records ...; it would allow the employer to keep the benefits of an employee's labor without paying due

---

[1] During the subject period, the minimum wage rate was $5.15 per hour for work performed prior to July 24, 2007, and $5.85 per hour for work performed on July 24, 2007 and after.

compensation...In such a situation, we hold that an employee has carried out his burden if he proves that he has, in fact, performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.

The testimony of the employees will show a consistent pattern of hours worked and pay received.  Under <u>Mt. Clemens</u>, this proof is sufficient to show the amount and extent of that work as a matter of just and reasonable inference and establishes that the employees performed work for which they were improperly compensated.  To require otherwise would enforce the type of penalty that <u>Mt. Clemens</u> holds is impermissible: rewarding the employer's failure to keep proper records and allowing the employer to keep the benefits of an employee's labor without paying due compensation.  <u>Wirtz v. Dix Box Co</u>., 322 F.2d 499, 501-02 (9th Cir. 1963).

Although the Defendants can seek to defend against the employees' claims by establishing the precise number of hours worked or by presenting evidence sufficient to negate the reasonableness of the inference to be drawn from the employees' evidence, they will not be able to do so.  The witnesses' testimony will clearly establish that any after-the-fact, self-serving testimony by Defendants that their employees could not have worked the hours alleged is completely insufficient to negate the Plaintiff's evidence.  Consequently, under the rationale of <u>Mt. Clemens</u>, the Plaintiff's claims for minimum wage underpayment should be sustained.

## IV.  Defendants Failed to Pay Employees an Overtime Rate for All Hours Worked over 40 Hours in a Workweek

The Plaintiff contends that the Defendants violated the provisions of Sections 7 and 15(a)(2) of the FLSA, 29 U.S.C. § 207 and § 215(a)(2), by employing employees for work weeks longer than forty (40) hours without compensating those employees for their employment in excess of forty (40) hours at rates not less than one and one-half times the regular rates at which they were employed.  Section 7(a) of FLSA, 29 U.S.C. § 207(a), provides:

[N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed an enterprise engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

Evidence:  This contention will be supported by the evidence adduced in support of the recordkeeping violation as set forth above, and, in addition, (i) employee testimony that they worked approximately 60 hours per week, from 6:00 am to 6:00 pm, Monday through Friday, and then from 6:00 am to 12:00 pm or later on Saturdays, and some Sundays; (ii) employee testimony and the admission of Defendants that some employees were paid on a piece rate basis, while others were paid an hourly rate; (iii) testimony of employees that they were paid piece rate for all hours worked, including hours worked in excess of 40 hours in a workweek; (iv) testimony of employees that they were paid a straight hourly rate for all hours worked, including hours worked in excess of 40 hours in a workweek; (v) testimony and documentary evidence regarding Wage Hour's calculations of the unpaid overtime compensation due; (vi) the claim/admission by Defendants that they did not make any cash payments to employees; (vii) the testimony of the Wage Hour Investigator as to the absence of any cash pay records produced by Defendants, and, (viii) testimony and documentary evidence of surveillance performed by the Wage Hour investigator that supports a work pattern of from 6:00 am to 6:00 pm Monday through Friday, and from 6:00 am to 12:00 pm or later on Saturdays.

Applicable Law:  Under this provision, the Plaintiff's burden is simply to show that the Defendants' employees worked hours in excess of the forty hour standard in a particular workweek and were not compensated for their work hours above forty at a rate of pay of not less than one and one-half times their regular rates of pay.  United States v. Rosenwasser, 323 U.S. 360, 363, 65 S.Ct. 295, 296-97 (1945).  Using the testimony of

**Trial Brief**                                                                                     **Page 8 of 23**

1   the Defendants' employees and Wage Hour Investigators, the Plaintiff will prove that
2   the Defendants failed to comply with the requirements of Section 7 of the FLSA, 29
3   U.S.C. §207.

4       As discussed above, because of the Defendants' failure to keep accurate records of
5   the hours worked by and the pay given to the Best Miracle employees during the subject
6   period, the rule in Mt. Clemens Pottery Co., 328 U.S. at 687-688 is controlling here as
7   well.

8   **V.  Necessary Proof of Backwages Due**

9       The Plaintiff contends that Defendants' underpayments of minimum wage for the
10  period of 8/29/05 through 9/4/05 (pay date 9/9/05) through pay period 8/6/07 – 8/12/07
11  (pay date 8/17/07) is $ 3,405.00 (if employee testimony regarding cash pay is credited to
12  the benefit of the Defendants) or $124,083.00 if cash pay is not credited.  Unpaid over-
13  time for the same period is $ $172,832.50 with cash pay credited, or $ 391,633.50 if it is
14  not.

15      Evidence:  The Plaintiff has calculated the backwages due based on the antici-
16  pated evidence that will establish the recordkeeping, minimum wage and overtime viola-
17  tions as set forth above.  Plaintiff will rely on testimony and documentary evidence of
18  Wage Hour personnel to explain the calculations.

19      Applicable Law:  To establish the amount of underpayments, as discussed infra,
20  where there are no accurate records of actual hours worked, as is the case here, an em-
21  ployee has carried his burden if he proves that he has in fact performed work for which
22  he was improperly compensated and if he produces sufficient evidence to show the
23  amount and extent of that work as a matter of just and reasonable inference.  The burden
24  then shifts to the employer to come forward with evidence of the precise amount of work
25  performed or with evidence to negate the reasonableness of the inference to be drawn
26  from the employee's evidence.  If the employer fails to produce such evidence, the court
27  may then award damages to the employee, even though the result is only approximate.
28  Mt. Clemens Pottery Co., 328 U.S. at 687-688.

**Trial Brief**                                                              **Page 9 of 23**

It is well established that "[e]ach employee need not testify in order to make out a prima facie case of the number of hours worked as a matter of 'just and reasonable inference.'" Donovan v. New Floridian Hotel, Inc., 676 F.2d 468, 472 (11th Cir. 1982). "The Mt. Clemens Pottery standard allows district courts to award back wages under the FLSA to non-testifying employees based upon the fairly representative testimony of other employees." McLaughlin v. Ho Fat Seto, 850 F.2d 586, 589 (9th Cir. 1988). Based on the representative testimony, the court may conclude that a prima facie case has been made for non-testifying employees as well. General Motors Acceptance Corp., 482 F.2d at 829. "There is no requirement that to establish a Mt. Clemens pattern or practice testimony must refer to all nontestifying employees…The requirement is only that the testimony be fairly representative." Donovan v. Bel-Loc Diner, Inc., 780 F.2d 1113, 1116 (4th Cir. 1985)

Even if the representative testimony is "inconsistent in terms of exact days and hours of overtime worked," a court may find," as a matter of just and reasonable inference," that all employees regularly worked excess time. Ho Fat Seto, 850 F.2d at 589. An employer may fail to meet his burden to negate the reasonable inferences drawn from representative employees' testimony if the fact finder determines the employer's witnesses not to be credible. Id. at 590.

No fixed ratio exists for determining what percentage of employees must testify in order to satisfy the plaintiff's burden. However, in other cases involving fairly small employee populations, a limited number of employee positions, and uniform work tasks, Courts have found a small number of employees representative of the whole. In Ho Fat Seto, which was also a garment sewing shop, the Court found that five testifying employees established a prima facie case on behalf of themselves and twenty-three non-testifying employees. Id., at 589. Only seven out of 200 employees testified in the Mt. Clemens Pottery case. Other cases are in accord: McLaughlin v. Dialamerica Marketing, 716 F.Supp. 812, 824 (D.N.J. 1989) (43 out of 393 market telephone researchers was sufficiently representative testimony for all employees); Bel-Loc Diner, 780 F.2d at

1116 (22 employees who testified were found to be representative of 98 kitchen staff and servers in an all-night diner).

In accordance with the above, the Plaintiff submits that her burden is to produce evidence by which the Court can by "just and reasonable inference" find the hours worked by the Defendants' employees and the pay given to the Defendants' employees. The burden then shifts to the Defendants to come forward with precise evidence to negate the reasonableness of the inferences to be drawn from the evidence presented by the Plaintiff.  The Defendants' failure to carry their burden results in a finding for the Plaintiff.  Skipper v. Superior Dairies, Inc., 512 F.2d 409, 419 (5th Cir. 1975); Wirtz v. Lieb, 366 F.2d 412 (l0th Cir. 1966).

The statutory minimum wage and overtime requirements cannot be disregarded merely because there are employees who are willing to work, or have worked, for lower rates without additional overtime pay.  Aside from thwarting the express legislative purpose of maintaining "the minimum standard of living necessary for health, efficiency, and general well-being of workers", section 2(a) of FLSA, 29 U.S.C. §202(a), such non-compliance gives an employer an unwarranted competitive advantage over those who conform to the Act. See e.g., Citicorp Industrial Credit Inc. v. Brock, 483 U.S. 27, 107 S.Ct. 2694 (1987); Schultz v. Mistletoe Express Service. Inc., 434 F.2d 1267 (l0th Cir. 1970); Wirtz v. Malthor, Inc., 391 F.2d 1 (9th Cir. 1968); Brennan v. Davis, 76 CCH LC ¶33,245 (N.D. Ga. 1975).

### VI.  Backwage Computations

Because the employer failed to maintain an accurate record of hours worked and wages paid, Wage Hour reconstructed the hours worked as 60 hours per week worked by each employee and reconstructed the payroll to include a credit of $200 per week for wages paid in cash to each employee that do not appear in the payroll records.  To calculate unpaid minimum wage, Wage Hour divided each employee's earnings by the number of hours worked, to obtain the hourly rate.  Where that rate fell below the applicable minimum wage, Wage Hour calculated the underpayment.

Overtime must be paid at a rate of time and one half an employee's regular rate for all hours worked in excess of 40 hours in a workweek.  In calculating backwages, the regular rate must be at least equal to the state's minimum hourly rate which was $6.75 through December 31, 2006, and $7.50 starting on January 1, 2007.  Therefore, for those employees whose regular rate was below $6.75 (or $7.50) per hour, Wage Hour calculated the difference between $6.75 (or $7.50) and the regular rate and multiplied that amount by 60, i.e., the total number of hours worked in each workweek, to obtain the regular rate due.  To obtain the unpaid half time, Wage Hour multiplied the number of hours worked over 40 by one half of $6.75 (or $7.50). Wage Hour accounted for variations in schedules and slow seasons by reducing the number of workweeks for which overtime was due.

Evidence:  The Plaintiff has calculated the backwages due based on the anticipated evidence that will establish the recordkeeping, minimum wage and overtime violations as set forth above.  Plaintiff will rely on testimony and documentary evidence of Wage Hour personnel to explain the computations.

Applicable Law:  When calculating unpaid overtime, the regular rate must be at least equal to the state's minimum wage rate pursuant to 29 C.F.R. § 778.5.  Testimony and document evidence of Wage Hour personnel are offered as an aid to the Court in computing the underpayments.  Seto, 790 F.2d at 1449; Humphries, 454 F.2d at 1282.

## VII.  Defendants violated the "hot goods" provision of the FLSA

Under Section 15(a)(1) of the FLSA, it is unlawful for any person to transport, offer for transportation, ship, deliver or sell in commerce, or ship, deliver or sell with knowledge that shipment, delivery or sale in commerce is intended, any goods in the production of which any employee was employed in violation of section 6 or 7 of the FLSA, 29 U.S.C. § 215(a)(1).

The Plaintiff contends that Defendants violated this "hot goods" provision when they shipped goods to Moa Moa, a garment manufacturer with whom they contracted to sew garments and other manufacturers including Byer of California throughout the sub-

**Trial Brief**                                                                                             **Page 12 of 23**

ject period.   As these goods were produced by Best Miracle employees who were not paid the minimum wage and overtime required under the Act, the goods were hot, and a violation of the prohibition of the shipment of hot goods occurred.

Evidence:  This contention will be supported by the evidence adduced of the re-cordkeeping, minimum wage and overtime violations set forth above, as well as (i) testimony of Wage Hour Investigator Leung and Defendants establishing that Best Miracle employees worked on goods for garment manufacturers Moa Moa and Byer of Califor-nia throughout the subject period; (ii) testimony of Moa Moa's general manager Young Chung, that Moa Moa shipped goods produced by Best Miracles to various locations outside of the state of California throughout the subject period; (iii) testimony establish-ing that in the weeks prior to July 30, 2007, Best Miracle employees worked on goods for Byer of California and Moa Moa; (iv) testimony and documentary evidence estab-lishing that manufacturers Moa Moa and Byer of California were notified by the De-partment of Labor that the goods produced by the employees of Best Miracle were "hot goods," and shipment of those goods would violate the FLSA; (v) testimony that Moa Moa shipped "hot goods" after July 30, 2007 after Defendant Thuy Thi Le advised them to do so; and, (vi) the documentary evidence regarding the specific goods shipped in in-terstate commerce.

Applicable Law:  The Supreme Court has pointed out that "exclusion from inter-state commerce of goods produced under substandard conditions is not simply a means to enforce other statutory goals; it is itself a central purpose of the FLSA." Citicorp In-dustrial Credit, 483 U.S. at 36, n8.  (Holding that a third party who held a security inter-est in goods produced by a manufacturer who violated the FLSA was subject to an in-junction under the FLSA hot goods provision).   The broad nature of Section 15(a)(1) is necessary to promote a critical purpose of the FLSA, i.e., to maintain a level playing field for employers by preventing the introduction of substandard goods into the stream of commerce so that non-complying employers do not gain an advantage over those who comply with the FLSA. Id., at 36-37.  See also Herman v. Fashion Headquarters, Inc.,

992 F.Supp. 677, 679 (S.D.N.Y. 1998) ("Because hot goods are produced more cheaply, they provide a competitive advantage to those who violate the FLSA and a comparative disadvantage to law-abiding manufacturers and distributors.")   The purpose of such an injunction is to "keep tainted goods from entering the channels of interstate commerce in competition with goods produced under the Act's standards." Brock v. Kentucky Ridge Mining Co., Inc., 635 F.Supp. 444, 451 (W.D. Ky. 1985)

## VIII.  Defendants Thuy Thi Le and Toan Van Nguyen are employers

The Plaintiff contends that Defendants Thuy Thi Le and Toan Van Nguyen are employers of the employees who worked at the Best Miracle Corporation within the meaning of the FLSA section 3(d), 29 U.S.C. 203(d).   They had the authority to hire and fire employees, set wages, hours and working conditions and other conditions of employment and/or knowledge that employees were performing work for which they were not paid in conformance with the FLSA.  They also made business decisions that directly impacted employees' wages when they entered into contracts with garment manufacturers at rates where compliance with the FLSA was unlikely.

Evidence:  This contention will be supported by (i) the stipulation of Defendant Le that she was an employer within the meaning of the FLSA; (ii) the testimony of employees who worked at Best Miracle Corporation, regarding Defendant Le's and Nguyen's role in operating the shop and preparing and distributing payroll.

Applicable Law:  As defined by the Act, an employer includes those who manage the business regarding employment practices.  Bonnette v. California Health and Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983); Donovan v. Sabine Irrigation Co., 695 F.2d 190, 194-195 (5th Cir.); Donovan v. Janitorial Services, Inc., 672 F.2d 528, 530-531 (5th Cir. 1982). Corporate officials may be held individually responsible for violations of the Act and may be personally restrained from withholding unpaid wages due to affected employees.  See Brock v. Hamad, 867 F.2d 804 (4th Cir. 1989); Sabine Irrigation Co., 695 F.2d at 196.

1        In determining whether a corporate official or owner is an employer within the

2    meaning of the Act, the court must focus upon the "totality of circumstances" and "the

3    economic realities" of the worker's employment. <u>Bureerong v. Uvawas</u>, 922 F. Supp.

4    1450, 1467 (C.D. Cal. 1996) (citations omitted); <u>see also</u> <u>Donovan v. Grim Hotel Co.</u>,

5    747 F.2d 966, 972 (5th Cir. 1984), <u>cert. denied</u>, 471 U.S. 1124 (1985); <u>Sabine Irrigation</u>

6    <u>Co.</u>, 695 F.2d at 194.  By setting the hours and wages, hiring and firing, and otherwise

7    acting in the interest of the employer, an individual may be held liable as an employer.

8    <u>See</u> <u>Brennan v. Jeffries</u>, 398 F. Supp. 471, 472-73 (D. Ariz. 1973), <u>aff'd</u>, 1975 WL 3574

9    (9th Cir. 1975) (personal liability imposed on owner).  "Where an individual exercises

10   'control over the nature and structure of the employment relationship,' or 'economic

11   control' over the relationship, that individual is an employer within the meaning of the

12   Act." <u>Lambert v. Ackerly</u>, 180 F.3d 997, 1012 (9th Cir. 1999)(citations omitted).

13       As employers, they are jointly and severally liable with the corporate defendant

14   for backwages that may be found to be due to the employees of the Best Miracle Corpo-

15   ration.  <u>Donovan v. Hamm's Drive Inn</u>, 661 F.2d 316 (5th Cir. 1981); <u>Marshall v. Ger-</u>

16   <u>will, Inc.</u>, 495 F.Supp. 744 (D. Md. 1980).

17   **IX.   Prospective Injunction**

18       The Plaintiff seeks to enjoin the Defendants, pursuant to section 17 of the FLSA,

19   29 U.S.C. § 217, from further violation of the FLSA's recordkeeping, minimum wage,

20   and overtime provisions.  As discussed below, section 17 of the FLSA, 29 U.S.C. § 217,

21   also includes provisions for the recovery of unpaid minimum wage and overtime com-

22   pensation withheld from employees.

23       In this case, the prospective injunction sought by the Plaintiff will not subject the

24   Defendants to any penalty or hardship. It does nothing more than require the Defendants

25   to do what the FLSA requires: compliance with the law for the public benefit. <u>See</u> <u>Brock</u>

26   <u>v. Big Bear Market No. 3</u>, 825 F.2d 1381, 1383 (9th Cir. 1987); <u>Marshall v. Chala En-</u>

27   <u>ters.</u>, 645 F.2d 799, 804 (9th Cir. 1981).  The injunction merely shifts the responsibility

28   for compliance onto the Defendants' shoulders instead of upon the government.  <u>Dono-</u>

van v. Sureway Cleaners, 656 F.2d 1368, 1375 (9th Cir. 1981).  The purpose of an injunction under the FLSA is not to punish past violations, but only to stop existing violations or to prevent future infractions in the public interest.  It is the number, nature and extent of violations under the FLSA which is the determinative factor of the necessity to protect  the public interest by judicial decree.  The Plaintiff expects to prove by credible evidence each of the violations discussed above and contends that an injunction restraining the Defendants from future violations of the minimum wage, overtime and record-keeping provisions of the FLSA should issue in this case.

In addition, Plaintiff contends that the Defendants should be enjoined from the continued withholding of minimum wages and overtime pay, plus pre-judgment interest.  This contention will be supported by the testimony and documentary evidence used to establish the Defendants' violations of sections 6, 7, and 11(c) of FLSA, 29 U.S.C. §§ 206, 207, 211(c).  Plaintiff further requests that the injunction include a provision requiring Defendant Le to report her employment or business location to the Department of Labor every six months.

## X.  Prejudgment Interest

Plaintiff contends that prejudgment interest should be assessed on the backwages found due.  Prejudgment interest is necessary to make whole Best Miracle's employees for the losses they have suffered caused by the delay and unlawful withholding of their wages.  Ford v. Alfaro, 785 F.2d 835, 842-843 (9th Cir. 1986).  It also serves to remedy the competitive disadvantage faced by employers that comply with the FLSA.  Donovan v. Sovereign Security, 726 F.2d 55, 58 (2nd Cir. 1984)  The rate used by the Internal Revenue Service to calculate underpayments owed to the United States pursuant to 26 U.S.C. § 6601 is appropriate.

## XI.  Statute of Limitations

Plaintiff contends that this action is subject to a three year statute of limitations because Defendants' violations of the FLSA were willful.   The Secretary intends to prove that the violations were willful based on Defendants' deliberate falsification of re-

cords, and a prior Wage Hour investigation of a garment shop run by Defendant Le that established similar wage and recordkeeping violations.

A three year statute of limitations is imposed on employers who "willfully" violate the FLSA pursuant to Section 6(a) of the Portal to Portal Act, 29 U.S.C. § 255 (a). For the purposes of the statute of limitations, a violation is "willful" if the employer knew or showed reckless disregard as to whether its conduct violated the Act. McLaughlin v. Richland Shoe, 486 U.S. 128 (1988). Reckless disregard may be shown by repeated violations, the falsification or withholding of required records, or other attempts to evade the Act's requirements. See, e.g., Martin v. Deiriggi, 985 F.2d 129, 136 (4th Cir. 1992) (Court affirmed willfulness finding based on abundant evidence of knowing violation, including evidence that employer withheld records to impede DOL); Dole v. Elliot Travel & Tours, 942 F.2d 962, 967 (6th Cir. 1991) (Willful violation affirmed where employer had actual knowledge of Act's requirements from earlier DOL investigation, and previously agreed to pay overtime and comply with Act, but failed to).

Evidence: The Secretary shall offer the following evidence in support of her contention that the violations of the FLSA committed by Defendants were willful: (i) the testimony of Best Miracle employees establishing that Defendants' time and payroll records were falsified; (ii) discrepancies between Defendants' payroll records and time cards including instances where employees' time cards showed they had worked but they do not appear on the payroll; (iii) testimony and documentary evidence of Wage Hour investigators regarding discrepancies between their observations of employee work and the time and payroll records supplied by Defendants; (iv) the admission by Defendants that they were aware of the requirements of the FLSA; (vi) testimony and documentary evidence that Defendant Thuy Thi Le was previously investigated by Wage Hour when she operated a garment shop called Double T Corporation; (vii) Wage Hour's conclusion that employees of Double T Corporation were not paid the minimum wage and overtime required by the FLSA and that accurate time and payroll records were not maintained; and, (viii) Defendant Thuy Thi Le was notified of the findings of

**Trial Brief**                                                                 **Page 17 of 23**

1 the Wage Hour investigation of Double T Corporation and the requirements of the

2 FLSA, particularly with application to a garment shop and agreed to comply with the

3 FLSA in the future.

4 **C. Defendant's Affirmative Defenses**

5 Defendants have indicated that they intend to pursue the following affirmative de-

6 fenses pled in their First Amended Answer[2]:

7 First Affirmative Defense: Defendants allege that each and every cause of action

8 pled in the complaint fails to state a cause of action

9 Plaintiff's position: The Secretary is unable to determine the elements of this de-

10 fense as it is not an affirmative defense at all. Defendants have denied the charging alle-

11 gations in the Secretary's Complaint. Affirmative defenses "admit allegations in the

12 complaint but assert facts that would defeat recovery." Gaudiello v. Allied-Signal, Inc.,

13 1990 WL 304271 at * 1 (N.D.Ill. 1990) citing Fleming v. Kane County, 636 F. Supp.

14 742, 749 (N.D.Ill. 1986)

15 In any case, the Secretary is authorized to seek injunctive relief under Section 17

16 of the FLSA, 29 U.S.C. § 217, to enforce the FLSA, and recover unpaid wages as set

17 forth in the Complaint.

18 Second Affirmative Defense: Defendants allege that the Complaint fails to state

19 facts sufficient to entitle Plaintiff to an award of any damages, costs, attorneys' fees or

20 any other type of relief.

21 Plaintiff's position: The Secretary is unable to determine the elements of this de-

22 fense as it is not an affirmative defense at all. Defendants have denied the charging alle-

23 gations in the Secretary's Complaint. An affirmative defense admits allegations in the

24 complaint but asserts facts that would defeat recovery. In any case, the Secretary is au-

25 thorized to seek injunctive relief under Section 17 of the FLSA, 29 U.S.C. § 217, to en-

26 ────────────────────

27     [2] Defendants indicated that they are no longer pursuing their Seventh Affirmative

28 Defense as to Defendant Thuy Thi Le or their Affirmative Defenses Eight, Nine, Ten

**Trial Brief**                                                             **Page 18 of 23**

1   force the FLSA, as set forth in the Complaint and recover unpaid wages.

2       <u>Third Affirmative Defense</u>:  Defendants allege that Plaintiff's claims are barred
3   under the applicable statue of limitations

4       <u>Secretary's position</u>:  Under the Portal to Portal Act, an action to enforce the
5   FLSA and recover unpaid wages must be commenced within two years from the date the
6   cause of action accrued, except that the limitations period is extended to three years for a
7   willful violation.  29 U.S.C. § 255(a).  A violation is willful if the defendant either knew
8   her conduct violated the FLSA or showed reckless disregard for whether her actions
9   complied with the Act.  <u>Richland Shoe</u>, 486 US at 133.

10       The Secretary will defeat any claims that the violations were not willful with evi-
11   dence of the following: (i) Defendants Thuy Thi Le and Toan Van Nguyen have admit-
12   ted that they were aware of the requirements of the FLSA; (ii)  Documentary evidence
13   and testimony by Wage Hour Investigator Leung and others will establish that Defen-
14   dant Thuy Thi Le operated a garment shop which was registered under her sister's name
15   called Double T Corporation ("Double T").  Double T was the subject of an investiga-
16   tion by Wage Hour which determined that under the helm of Defendant Thuy Thi Le,
17   Double T had violated the FLSA's minimum wage, overtime and recordkeeping re-
18   quirements.  Double T paid the backwages calculated by Wage Hour, and Defendant
19   Thuy Thi Le agreed to comply with the FLSA in the future; (iii) Documentary evidence
20   and testimony of Best Miracle employees will establish that Defendants falsified Best
21   Miracle records to make it appear that employees worked fewer hours than they had ac-
22   tually worked.

23       <u>Fourth Affirmative Defense:</u>  Defendants allege that Plaintiff failed to mitigate its
24   damages.

25       <u>Plaintiff's position:</u>  Defendants apparently intend to establish this defense with
26   evidence that Byer of California, a garment manufacturer with whom Best Miracle con-

27

28   and Twelve.

**Trial Brief**                                                                                          **Page 19 of 23**

tracted, posted $9,392.60 with the Department of Labor to cover a portion of the back-wages owed by Best Miracle to its employees.  Defendants contend that these funds should be credited against any amounts found due by the Court in this matter.  Plaintiff does not disagree that money posted by Byer of California can be used to set off Best Miracle's liability for the amount posted.

Defendants also apparently claim that Plaintiff may intend to recover additional amounts owed from another garment manufacturer, Moa Moa, and, thus, Plaintiff will obtain a double recovery of the backwages.  There is no basis for this argument because except for the instant action, Plaintiff has not instituted suit against Moa Moa or any other entity to recover the backwages owed to the employees of Best Miracle.

Seventh Affirmative Defense:  Defendants allege that Defendant Nguyen is not an "employer" within the meaning of FLSA Section 203(d), 29 U.S.C. 203(d)). (Defendants have stipulated that Defendant Le is an employer within the meaning of the Act.)

Plaintiff's position:  This is not properly an affirmative defense. Defendants have denied the charging allegations in the Secretary's Complaint.  Affirmative defenses "admit allegations in the complaint but assert facts that would defeat recovery." Gaudiello, 1990 WL 304271 at * 1.

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), while the verb, "employ" is defined to mean "suffer or permit to work," 29 U.S.C. § 203(g).  A person who possesses or exercises authority over the employees or actively administers the business of the corporate defendant is an employer within the meaning of the Act.  Sabine Irrigation, 695 F. 2d at 194-195.

Evidence to defeat Defendants' Affirmative Defense will consist of employer and employee testimony as to Defendant Nguyen's role in Best Miracle, including payroll and other business administration.

Eleventh Affirmative Defense:  Defendants allege that persons who worked on garments in their homes were not employees covered by the FLSA.

<u>Plaintiff's position</u>:  Plaintiff is somewhat unclear as to Defendants' basis for this defense as they appear to claim that persons who are employees when they work in the Best Miracle shop are not also employees when they perform work for Best Miracle in their own home.

Under Section 3(g) of the FLSA, "employ" includes "to suffer or permit to work."  It is well established that whether a person works at home has little bearing on the issue of employee status under the FLSA where an employment relationship exists.  <u>Goldberg v. Whitaker House Cooperative</u>, 366 U.S. 28, 81 S. Ct. 933 (1961); <u>Hodgson v. Cactus Craft</u>, 481 F.2d 464 (9th Cir. 1973).

Evidence to defeat Defendants' Affirmative Defense will consist of testimony by third party employee witnesses as to the work they did for Best Miracle at home.

<u>Thirteenth Affirmative Defense</u>:  Defendants allege that there is no equitable basis for an injunction because Defendants are currently in compliance with the FLSA and there is no evidence that future violations are likely to occur.

<u>Plaintiff's Position:</u>  Under FLSA Section 17, the Secretary is authorized to seek an injunction to enjoin future violations of the FLSA.  29 U.S.C. § 217.  Where FLSA violations have been established, particularly where falsification of records have been established, the Court should issue an injunction, even if the employer is in present compliance or claims to be so.  <u>Dunlop v. Davis</u>, 524 F.2d 1278, 1280 (5th Cir. 1975).

The Plaintiff intends to defeat this Affirmative Defense with the evidence she will present to establish violations of the FLSA, including: (i) the testimony of the Defendants' employees as to their hours worked and failure of the time cards to accurately reflect all hours worked; (ii) the testimony of John Leung, the investigator for the testimony of John Leung, the Wage and Hour Investigator, that Defendants failed to produce the time records for all the hours worked by employees; (iii) testimony and documentary evidence regarding surveillance of the Best Miracle shop conducted by WHI Leung; (iv) testimony and documentary evidence that Defendants' payroll records falsely show that employees as working between 30-40 hours per week when, in fact, they worked ap-

**Trial Brief**                                                                                   **Page 21 of 23**

proximately 60 hours a week; (v) testimony and documentary evidence from Wage Hour investigators regarding a July 30, 2007 visit to the shop, when the WH investigators observed 31 employees at their work stations, 6 in the lunch room and 10 outside the shop, while Defendants' timecards were punched in to show only 15 as working on that day; (vi) discrepancies between Defendants' payroll records and time cards including instances where employees' time cards showed they had worked but they do not appear on the payroll; (vii) employee testimony regarding instances where they were paid in cash; and, (x) documentary evidence that the cash payments were not reflected on the payroll records.

**D.  Anticipated Evidentiary Issues**

Plaintiff has filed the following motions in limine:

1.  Motion in Limine No. 1 to preclude Defendants' expert witness, Bob Equals, C.P.A., from testifying at trial;

2.  Motion in Limine No. 2 to preclude Defendants from inquiring about the Social Security numbers of non-party employee witnesses during trial;

3.  Motion in Limine No. 3 to preclude Defendants from introducing at trial: (1) twenty-one (21) preprinted fill-in forms procured by Jesse Atilano; and, (2) five unsigned employee statements previously attached to Defendants' motion for summary adjudication;

4.  Motion in Limine to preclude Defendants from inquiring as to the informer status of non-party employee witnesses at trial.

Defendants have filed the following motions in limine:

1.  Motion in Limine No. 1 Regarding Plaintiff's Evidentiary Burden at Trial;

2.  Motion in Limine No. 2 which seeks to preclude the Secretary from introducing any evidence at trial concerning Double T Corporation;

3.  Motion in Limine No. 3 which seeks to preclude the Secretary from introducing Defendants' tax records or offering any evidence concerning Defendants' tax records at trial;

**Trial Brief**                                                                  **Page 22 of 23**

    4.  Motion in Limine No. 4 to Preclude Plaintiff from Introducing any Evidence Concerning when Vehicles Arrived or Left the Premises.

**E.  Anticipated Issues of Law**

    The Plaintiff is not aware of any such issues.

**F.  Bifurcation**

    There is no need for a bifurcation of the issues in this case.

**G.  Jury Trial**

    This will be a bench trial.  By the Order entered on January 14, 2010, the Court granted the Secretary's Motion to Strike the Jury Demand.

**H.  Attorney Fees**

    While there is no specific provision in FLSA for attorneys fees, attorneys' fees can be recovered if the Defendants prevail and otherwise come within the Equal Access to Justice Act, 28 U.S.C. §2412.  The Plaintiff contends that no attorneys' fees should be recoverable in this case.

Dated: February 8, 2010

DEBORAH GREENFIELD
Acting Deputy Solicitor of Labor

LAWRENCE BREWSTER
Regional Solicitor

DANIEL J. CHASEK
Associate Regional Solicitor

_____/s/_____
BORIS ORLOV, Attorney
Attorneys for the Plaintiff
U.S. Department of Labor